UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**
**FEB 15 2023**
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **4:23CR052 SEP/JMB** |
| | ) |
| PAMELA HUBBARD and | ) |
| IRVIN COATS, | ) |
| | ) |
| Defendants. | ) |

### INDICTMENT

The Grand Jury charges that:

### COUNT I
### Conspiracy to Commit Wire Fraud

**A.    Introduction**

At all times material to this Information, unless otherwise specified below:

1. Defendant PAMELA HUBBARD was a resident of St. Louis, Missouri, within the Eastern District of Missouri.

2. Defendant IRVIN COATS was a resident of Florissant, Missouri, within the Eastern District of Missouri.

3. Star Shyne LLC ("Star Shyne") was a limited liability company registered with the Missouri Secretary of State in June 2019 for the following purpose: "Cleaning Service." According to documents filed with the Missouri Secretary of State, HUBBARD and her son R.S. were organizers for Star Shyne.

4. Abounding Protection LLC ("Abounding Protection") was a limited liability company registered with the Missouri Secretary of State in November 2007 for the following

1

purpose: "To Protect Community Property and Personal." According to documents filed with the Missouri Secretary of State, COATS was the organizer for Abounding Protection.

5.  The Wing Strip LLC ("Wing Strip") was a limited liability company registered with the Missouri Secretary of State in November 2019 for the following purpose: "Food Service." According to documents filed with the Missouri Secretary of State, HUBBARD and her son R.S. were organizers for Wing Strip.

### B.  The Paycheck Protection Program

6.  The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in economic recovery after disasters.

7.  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), is a federal law that was enacted in March 2020 in conjunction with a presidentially declared national emergency to provide emergency financial assistance to the millions of Americans suffering the economic impact caused by the COVID-19 pandemic.

8.  One source of relief provided for in the CARES Act is the authorization of forgivable loans to small businesses for job retention and certain other expenses, through the Paycheck Protection Program ("PPP"). The purpose of loans issued under the PPP was to enable small businesses suffering from the economic downturn to continue to pay salary or wages to their employees.

9.  To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, signed by an authorized representative of the business. The PPP loan application

required the business to acknowledge the program rules and make certain affirmative certifications to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to certify: (a) that the small business was in operation on February 15, 2020; (b) the average monthly payroll expenses and/or the total amount of gross income; and (c) the number of employees. These certifications were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for PPP loans were required to submit documentation supporting their payroll expenses.

10. A PPP loan application was then processed by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, which were then guaranteed by the SBA. Generally, in the event that the borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lending financial institution and take on the responsibility for paying back the loan.

11. PPP loan funds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities for the business. In the PPP loan application (SBA Form 2483), the borrower must certify that "[a]ll SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules." In that same application, the borrower must also certify that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule." Under the applicable PPP rules and guidance, the interest and principal on the PPP loan was eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan toward payroll expenses.

12. Kabbage, Inc. was a participating lender and issued PPP loans guaranteed by the

SBA. Kabbage, Inc. processed applications for PPP loans submitted through an Internet-based web portal and was headquartered in Georgia.

### C. The Conspiracy

13. Beginning on or about February 2019, and continuing through at least in or about March 9, 2021, in the Eastern District of Missouri and elsewhere, the defendants,

**PAMELA HUBBARD and IRVIN COATS,**

knowingly and willfully combined, conspired, confederated, and agreed together and with each other to commit Wire Fraud, that is, by devising a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and in executing and attempting to execute said scheme, caused writings, signs, signals, and sounds to be transmitted by means of wire in interstate commerce, in that, the PPP loan applications submitted by defendants sought loan funds the issuance of which was authorized in connection with a major disaster declaration under Section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, in violation of Title 18, United States Code, Section 1343.

### Manner and Means of the Conspiracy

14. The manner and means by which the conspiracy to commit wire fraud were to be accomplished included, but were not limited to, the following:

    a. The primary purpose of the conspiracy was to obtain monies through fraudulent PPP loans for use in funding the creation and building of a new restaurant "The Wing Strip" to be located in Florissant, Missouri.

    b. It was part of the conspiracy that the defendants submitted three separate fraudulent applications for PPP loans wherein the defendants made numerous misrepresentations regarding the applicants and the intended purpose of the funds.

### *Abounding Protection Loan #1*

c. It was further part of the conspiracy that, on May 8, 2020, Coats electronically submitted a PPP loan application to Kabbage, Inc. for Abounding Protection seeking a loan in the amount of $53,125.00.

d. In this application, Coats represented that Abounding Protection had 12 employees with an average monthly payroll of $21,250, and that the borrowed funds would be used to meet payroll costs, to fund building lease/mortgage expenses, and to fund utilities expenses. As part of the loan application, Coats submitted an Internal Revenue Service ("IRS") tax form W-3 for the year 2019 purporting that Abounding Protection had wages of $3,000,000 and six employees in 2019.

e. In truth and fact, at the time the PPP loan application was completed and submitted, Abounding Protection had no revenue, no employees, no wages, and no operations. In addition, the IRS tax form that Coats submitted with the application was false and fraudulent.

f. In reliance on Coats' representations in the loan application, Kabbage, Inc. approved the PPP loan in the amount of $53,125.00 and, on May 12, 2020, these funds were deposited into a Regions Bank account ending in #9000 held in the name of Irvin C. Coats (the "Regions Bank Account").

### *Star Shyne LLC Loan Application*

g. It was further part of the conspiracy that, on June 11, 2020, Hubbard electronically submitted a PPP loan application to Kabbage, Inc. for Star Shyne seeking a loan in the amount of $371,245.00.

h. In this application, which Hubbard falsely submitted and signed in the name of her son, R.S., Hubbard represented that Star Shyne had 6 employees with an average monthly

5

payroll of $148,498, and that the borrowed funds would be used to meet payroll costs, to fund building lease/mortgage expenses, and to fund utilities expenses.

        i.     As part of the loan application, Hubbard submitted a report titled "Star Shyne LLC Average Monthly Qualified Payroll Cost Report" purporting that the monthly payroll expenses of nine employees was $68,331.85 during an unspecified 12-month window. Hubbard also submitted IRS Schedule C forms for the years 2019 and 2020, wherein the forms reported revenue of $1,500,000 (in 2019) and $1,000,000 (in 2020) and gross income of $1,166,860 (in 2019) and $573,580 (in 2020). Hubbard also submitted lease paperwork purporting that Star Shyne had a lease to operate its business at a location in Florissant, Missouri. Finally, Hubbard submitted a voided check written from First Bank account ending in #2929 held in the name of The Wing Strip (the "First Bank Account") and directed that the loan funds should be sent to that account.

        j.     In truth and fact, at the time the PPP loan application was completed and submitted, Star Shyne had some revenue and employees, but not nearly to the extent represented in the loan application. In addition, each of the financial reports and IRS forms that Hubbard submitted with the application were false and fraudulent. Finally, Hubbard had altered the voided the check from First Bank Account to remove any evidence that the account was held in the name of "The Wing Strip LLC."

        k.     In reliance on Hubbard's representations in the loan application, Kabbage, Inc. approved the PPP loan in the amount of $371,245.00 and, on June 15, 2020, these funds were deposited into the First Bank Account.

### *Abounding Protection Loan #2*

l.  It was further part of the conspiracy that, on March 5, 2021, Coats electronically submitted another PPP loan application to Kabbage, Inc. for Abounding Protection seeking a loan in the amount of $24,166.

m.  In this application, Coats represented that Abounding Protection had 12 employees with an average monthly payroll of $9,667, and that the borrowed funds would be used to meet payroll costs, to fund building lease/mortgage expenses, and to fund utilities expenses. As part of the loan application, Coats submitted an IRS tax form W-3 for the year 2020 purporting that Abounding Protection had wages of $200,000 and 12 employees in 2020.

n.  In truth and fact, at the time the PPP loan application was completed and submitted, Abounding Protection had no revenue, no wages, no employees, and no operations. In addition, the IRS tax form that Coats submitted with the application was false and fraudulent.

o.  In reliance on Coats' representations in the loan application, Kabbage approved the PPP loan in the amount of $24,166.00 and these funds were deposited into the Regions Bank Account on March 9, 2021.

### *Use of PPP Loan Funds*

p.  In total, the defendants obtained $448,536.00 from the three aforementioned fraudulent PPP loans.

q.  After the loans were funded, the defendants did not use the borrowed funds to meet payroll costs, or to fund building lease/mortgage expenses or utilities expenses of the respective businesses. Instead, the defendants transferred the proceeds from these loans to other accounts controlled by them, used proceeds to pay contractors related to the build out of the

planned location of "The Wing Strip," and to improve the real property located at 14245 Cape Horn Place, Florissant, Missouri, 63034.

In violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 18, United State Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Section 1349, as set forth in Count I, the defendant(s) shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violation(s).  Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation(s), which is at least $448,536.00.

2. Specific property subject to forfeiture includes, but is not limited to, the following:

   a. $82,351.43 in proceeds from the sale of the real property located at 14245 Cape Horn Place, Florissant, Missouri, 63034.

3. If any of the property described above, as a result of any act or omission of the Defendants:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

8

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____
KYLE T. BATEMAN, #996646DC
Assistant United States Attorney